# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL ACTION NO. 4:21-CR-48-ALM- |
| § | CAN-1 |
| SHANLIN JIN (1) § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant Shanlin Jin's Motion to Suppress Defendant's Statements ("Defendant's Motion to Suppress") [Dkt. 33]. On November 12, 2021, a hearing ("Hearing") was held on the pending Motion, and the undersigned heard oral argument from both the Government and Defendant. After considering the Motion, all relevant filings and evidence, as well as the oral argument of counsel at Hearing, the Court recommends that Defendant's Motion to Suppress [Dkt. 33] be **DENIED**.

## BACKGROUND

On January 24, 2021, Defendant was charged by criminal complaint with receipt and possession of child pornography [Dkt. 1, Sealed]. Defendant was subsequently indicted on February 24, 2021, and charged in three counts with violations of: Title 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), Receipt of Child Pornography ("Count 1"); Title 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), Distribution of Child Pornography ("Count 2"); and Title 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), Possession of Child Pornography ("Count 3") [Dkt. 21]. The Indictment charges that Defendant, "using a peer-to-peer file sharing network, the Internet, and electronic devices that he owned and possessed," received, possessed, and distributed child pornography [Dkt. 21 at 1].

**THE INVESTIGATION AND SEARCH WARRANT**

On or about December 13, 2020, Collin County Sheriff's Officer Investigator Lee McMillian ("McMillian"), acting in an undercover capacity, investigated file sharing of child pornography on a BitTorrent P2P file-sharing network. During the course of his investigation, McMillian identified an IP address that had successfully downloaded files depicting child pornography. Defendant is the subscriber of this IP address. Based on the foregoing, McMillian applied for a search warrant for Defendant's residence, the premises located at 1910 Saint Johns Avenue, Allen, Texas.

At 7:00 p.m. on January 12, 2021, members of the Collin County Sheriff's Office, with assistance from the Plano Police Department, served the search warrant [Dkt. 44 at 14-15]. Approximately six (6) law enforcement personnel were present when the search warrant was executed, including McMillian [Dkt. 44 at 16]. Defendant and one other individual were the only persons present in the residence at the time of the search [Dkt. 44 at 16]. During the search, Defendant was not forcibly removed from the residence, and officers did not place Defendant in handcuffs or physically touch him [Dkt. 44 at 19]. Defendant stood outside the residence for several minutes while officers began their search of the residence; during this time, an officer brought Defendant a coat because it was cold outside [Dkt. 44 at 20]. Defendant was never expressly told by law enforcement that he was or was not free to leave during the execution of the search warrant at the residence.

Approximately thirty (30) minutes after Defendant stepped outside of the residence, McMillian, who was dressed in plain clothes, requested to speak with Defendant in an unmarked patrol car parked on the street close to the driveway of the residence [Dkt. 44 at 20-21]. The street was not closed to through traffic during this time. Defendant joined McMillian in the vehicle

[Dkt. 44 at 25]. Defendant sat in the front passenger seat of the vehicle and was unbuckled or otherwise unrestrained; he was not handcuffed at any time, nor was his personal space encroached upon. The vehicle was unlocked and McMillian, who sat in the driver's seat, was the only officer present [Dkt. 44 at 24, 42, 90].

**THE INTERVIEW**

The interview conducted by McMillian was recorded. McMillian questioned Defendant for approximately thirty-two (32) minutes in the vehicle [Dkt. 44 at 49]. The interview was conducted in English. Defendant was born in China and is a native Mandarin speaker. At the outset of the recorded interview, McMillian read Defendant his *Miranda* rights in English, to which Defendant responded that he understood his rights and was willing to speak with McMillian:

| | |
|---|---|
| McMillian: | "Okay. I—I've got to read this to you for you, that's how the U.S. government works, okay?" |
| Defendant: | "Okay." |
| McMillian: | "Let me read this to you in its entirety. Uh, please don't interrupt me while I'm reading it to you." |
| Defendant: | "Yes sir." |
| McMillian: | "And then when I'm done, I'd like to talk to you, okay?" |
| Defendant: | "Okay." |
| McMillian: | "All right. You have the right to remain silent and not make any statement at all, and that any statement you make may be used against you at trial. Any statement you make may be used as evidence against you in court. You have the right to have a lawyer present to advise you prior to and during any questioning. If you're unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning. You have the right to terminate this interview at any time. Do you understand?" |
| Defendant: | "Yeah." |
| McMillian: | "Will you still talk to me?" |
| Defendant: | "Mm-hm, sure." |
| McMillian: | "Okay." |
| Defendant: | "Actually, I don't know what was—" |
| McMillian: | "Okay." |
| Defendant: | "actually I don't know what" |
| McMillian: | "Okay. But you speak English, right? |
| Defendant: | "Yeah." |

| | |
|---|---|
| McMillian: | "Do—would you—like, would you say that you're fluent in English?" |
| Defendant: | "Mm…" |
| McMillian: | "Mostly fluent?" |
| Defendant: | "Close to fluent, because I haven't talked to people in English for a long time because of COVID and—" |
| McMillian: | "Okay." |

[Dkt. 45-1 at 1-3].  Defendant was not given a written copy of his *Miranda* rights.

Following this exchange, for a period of approximately ten minutes, McMillian gathered personal background information from Defendant, including information such as Defendant's educational background and length of time at his current residence [*See* Dkt. 45-1 at 3-12]. Defendant explained that he is a citizen and national of China who was attending a PhD program in Economics at Southern Methodist University, and while he had lived in the United States since 2016, he had moved to his current residence in June or July of 2020 [Dkt. 45-1 at 6-7].  Defendant advised he was responsible for the payment of utilities, including the internet service [Dkt. 45-1 at 9-10].   Defendant responded to each of McMillian's questions thoroughly and asked for clarification of several questions posed to him.  At one point in time, McMillian asked Defendant during the interview to identify where his room is located in the house [Dkt. 45-1 at 13].  While Defendant explained the location, McMillian rolled down the car window on Defendant's side of the vehicle, which was closest to the residence [Dkt. 45-1 at 15-16].  Defendant proceeded to point at his room in the house, and McMillian then rolled up the window [Dkt. 45-1 at 15-16].

As the conversation progressed, Defendant admitted to using the BitTorrent program to download files to his computer [Dkt 45-1 at 20-21].  McMillian explained that he knows that Defendant downloaded child pornography [Dkt. 45-2 at 1].   Defendant initially denied downloading child pornography using BitTorrent, but later during the interview, admits to viewing pornography [Dkt. 45-3 at 1-2].  At the end of the interview, McMillian advised Defendant that law enforcement would be confiscating all of his electronic devices and that Defendant would need

to remain outside of the residence while the search was completed; he then told Defendant to "hang tight" [Dkt. 45-3 at 3-4]. McMillian exited the vehicle while Defendant remained in the car. McMillian walked around to the passenger side and opened the door for Defendant to get out of the car.

## THE MOTION TO SUPPRESS

On October 1, 2021, Defendant filed the instant Motion to Suppress, seeking suppression of "all oral and written statements of Defendant that were obtained illegally" [Dkt. 33]. At the hearing, Defendant clarified he seeks to suppress Defendant's oral and written statements obtained "during the interrogation by the agents in the car" on January 12, 2021 [Dkt. 44 at 5]. Defendant argues such statements must be suppressed as he did not knowingly waive his *Miranda* warnings during the custodial interrogation [Dkt. 33 at 11]. The Government filed its Response to Defendant's Motion to Suppress on October 15, 2021 [Dkt. 35]. The Government urges that no custodial interrogation took place, and even assuming one had, Defendant sufficiently understands English to have knowingly waived his *Miranda* rights [Dkt. 35 at 10]. Defendant filed a Reply on October 22, 2021 [Dkt. 40]. The Court set the matter for Hearing, held on November 12, 2021 [Dkts. 39; 42; 43]. The transcript of Hearing was filed November 22, 2021 [Dkt. 44].

## ANALYSIS

To reiterate, Defendant moves to suppress all oral and written statements of Defendant obtained from the interview by McMillian on January 12, 2021. Defendant urges the Court to find the interview constituted a custodial interrogation for purposes of the Fifth Amendment privilege against self-incrimination, and that Defendant did not knowingly and voluntarily waive his *Miranda* rights, and therefore his statements made to McMillian are inadmissible.

The Government contends that the interview did not constitute a custodial interrogation; however, if the Court finds that it did, Defendant knowingly and voluntarily waived his *Miranda* rights.

**THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION**

The Fifth Amendment protects the right that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Supreme Court has explicitly outlined the procedural safeguards for protection against self-incrimination in *Miranda v. Arizona*.

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

*Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

Defendant bears the initial burden of establishing that he was subjected to a custodial interrogation, such that *Miranda* is applicable. *See United States v. Webb*, 755 F.2d 382, 390 (5th Cir. 1985); *United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984), *overruled on other grounds by United States v. Bengivenga*, 845 F.2d 593 (5th Cir. 1988) (en banc). If the Defendant successfully establishes a *prima facie* case of custodial interrogation, the burden shifts to the Government to demonstrate by preponderance of evidence Defendant waived his Fifth

Amendment rights. *See United States v. Burnette*, 535 F. Supp. 2d 772, 782 (E.D. Tex. 2007) (citing *United States v. De La Fuente*, 548 F.2d 528, 533 (1977)). The Court first addresses the threshold matter of custodial interrogation.

**CUSTODIAL INTERROGATION**

As set forth *supra*, *Miranda* warnings are required only when an individual has been "taken into custody or otherwise deprived of his freedom of action in any significant way;" or stated more succinctly, *Miranda* only applies to "custodial" interrogations. *Miranda*, 384 U.S. at 444-45. A defendant who voluntarily gives a statement to law enforcement in a non-custodial setting need not be advised of his *Miranda* rights. "A suspect is 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Nelson*, 990 F.3d 947, 956 (5th Cir. 2021) (quoting *United States v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015)). "A suspect's custodial status 'is an objective inquiry … that depends on the totality of circumstances.'" *United States v. Michalik*, 5 F.4th 583, 588 (5th Cir. 2021) (quoting *Bengivenga*, 845 F.2d at 596); *United States v. Ortiz*, 781 F.3d 221, 230 (5th Cir. 2015) (citing *Wright*, 777 F.3d at 774) ("The subjective views harbored by either the interrogating officers or the person being questioned are irrelevant."). In determining whether an individual is in custody, five factors are relevant: "(1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory nature of the questioning; (4) the amount of restraint on the individual's physical movement; and (5) statements made by officers regarding the individual's freedom to move or leave." *Ortiz*, 781 F.3d at 229-30 (quoting *Wright*, 777 F.3d at 774-75). Consideration of the totality of these factors weighs against a finding that Defendant was subjected to custodial interrogation.

There is "no constitutional time limit for authorities to question a detainee before triggering *Miranda*"; in other words, there is no bright line rule for the length of the interview. *United States v. Harrell*, 894 F.2d 120, 124 n.1 (5th Cir. 1990) ("[A]pproximately an hour raises considerable suspicion . . . [however], [o]verreliance upon the length of the delay thus injects a measure of hindsight into the analysis which we wish to avoid. Accordingly, we reject the broad proposition that a short delay constitutes *per se* a noncustodial interrogation or that an hour-long delay constitutes a *per se* custodial interrogation."); *see United States v. Gonzalez*, 814 F. App'x 838, 844 (5th Cir. 2020) (quoting *Harrell*, 894 F.3d at 124 n.1) ("[W]e have previously rejected the 'broad proposition' that 'an hour-long [interview] constitutes *per se* custodial interrogation.'"). While no bright line rule exists, the Fifth Circuit has recently found an interview "about forty minutes" in length to be "neutral." *Gonzalez*, 814 F. App'x at 844 ("[T]he length of the pre-warning interview—forty minutes—does not weigh heavily on either side of the scale."). It has also found an interview about thirty-minutes in length to lean toward noncustodial. *Ortiz*, 781 F.3d at 233 (finding that the length of the 30-minute stop indicated that the defendant was not in custody). Here, the interview, which was recorded in its entirety, lasted for approximately half an hour, and the first half of the interview was almost exclusively limited to Defendant's personal background information, including his education and living arrangements.

Moreover, contrary to Defendant's assertion that "a police vehicle is essentially a stationhouse," courts in this circuit have routinely recognized that questioning in a police vehicle does not render an interrogation custodial. *See United States v. Broca-Martinez*, 162 F. Supp. 3d 565, 570 (S.D. Tex. 2016) (finding that the defendant who was seated in the back seat of a police car while questioned was not in custody for purposes of *Miranda* because the question was investigatory); *United States v. Montgomery*, No. 3:18-CR-316-L, 2018 WL 5995513, at *6-7

(N.D. Tex. Nov. 15, 2018) (finding no custodial interrogation where the defendant was questioned in the police vehicle after a traffic stop and he was never restrained or handcuffed prior to formal arrest). The record is clear that Defendant was interviewed close to his residence in a vehicle subject to public scrutiny. *See Montgomery*, 2018 WL 5995513, at *7 ("in light of the fact the entirety of the stop was performed on the side of a public roadway, the court determines that his brief detention in the patrol vehicle did not render the questioning custodial."). The vehicle was unlocked,[1] and Defendant was seated in the front passenger seat and was unrestrained at all times. No handcuffs were placed upon him, and he was not physically forced into the car or physically forced to remain in the car. Indeed, there does not appear to be any real restraint on Defendant's movement. Nor did McMillian threaten Defendant with or brandish any weapons at Defendant. McMillian testified he chose to conduct the interview in the vehicle largely because it was too cold to stand outside and talk, as evidenced by the fact that law enforcement had earlier provided Defendant a jacket. Further, McMillian was dressed in plain clothes and was the only officer who joined Defendant in the vehicle, sitting across from him in the driver's seat of the car. These facts weigh in favor of finding a reasonable person in Defendant's position would not have understood the situation to constitute a restraint on freedom of movement to the degree which the law associates with formal arrest. *See Wright*, 777 F.3d at 771, 777 (finding that questioning defendant in an unmarked patrol car close to his home weighed in favor of finding the interview as noncustodial because it was "in a car subject to public scrutiny"); *Michalik*, 5 F.4th at 588 (finding the location of the interview was noncustodial where defendant "sat in the passenger-side front seat of a police car on the street near his house"); *Ortiz*, 781 F.3d at 231 (finding that "[t]he fact

---

[1] Defendant's briefing asserts in numerous instances that the police vehicle was actually locked; however, McMillian's testimony at Hearing was unequivocal that the vehicle was unlocked at all times. The Court can find no evidence of record demonstrating that the vehicle was locked and that Defendant was unable to open the door himself [Dkt. 44 at 24, 42, 90].

that an interview takes place in a public location weighs against the conclusion that a suspect is in custody."); *Montgomery*, 2018 WL 5995513, at *4, *6 (finding the defendant was not in custody where he was not handcuffed in the police vehicle while being questioned).

The length and location of questioning and amount of restraint do not weigh in favor of finding a custodial interrogation. On the other hand, while the conversation between Defendant and McMillian was calm and cordial, the crucial inquiry pertaining to the accusatory or non-accusatory nature of the questioning is the officer's statements about the defendant's involvement in the crime, not the willingness of the defendant to engage in questioning. *See, e.g.*, *United States v. Patterson*, 393 F. Supp. 3d 456, 468 (E.D. La. 2019) (citing *Bengivenga*, 845 F.2d at 597 n.16) ("The awareness of the person being questioned by an officer that he has become the 'focal point' of the investigation, or that the police already have ample cause to arrest him . . . may well lead him to conclude, as a reasonable person, that he is not free to leave.") (cleaned up); *United States v. Chivara*, 614 F.3d 127, 130-31, 134 (5th Cir. 2010) (finding "increasingly accusatory questioning" where officers accused defendant of the crime and questioned her truthfulness in her responses); *United States v. Romero-Medrano*, 207 F. Supp. 3d 708, 713 (S.D. Tex. 2016). McMillian did call into question the veracity of Defendant's statements during the interview. This "accusatory questioning may lead a person to think he cannot leave the interrogation." *Romero-Medrano*, 207 F. Supp. 3d at 713.

Defendant relies heavily on the fact that Defendant was never told he was free to leave or that he was not under arrest in urging a custodial interrogation existed. However, as with the length of questioning, "[t]here is no hard-and-fast requirement" that a suspect be told that he is free to leave. *United States v. Alzarez*, 837 F. App'x 296, 300 (5th Cir. 2020). And, as the Government advanced at Hearing, the record is similarly devoid of any statements that Defendant

REPORT AND RECOMMENDATION – Page 10

was not free to leave, that he was under arrest, or that he was required or obligated to answer McMillian's questions. *See Gonzalez*, 814 F. App'x at 843 ("By asking—rather than forcing—Gonzalez to participate in the interview, the agents implied that he was free to terminate the questioning and leave the vehicle at any time."); *United States v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006) (finding defendant was not in custody where she was not told that she was free to leave or that she had to meet with the agents). Further to this point, Defendant focuses heavily on McMillian's statements at the end of the interview—"hang tight" and "stay here" [Dkt. 45-3 at 3-4]. Reviewing the totality of the circumstances surrounding this statement makes clear that these statements were related to the fact that a search of the residence had not been completed, not that Defendant was locked in the vehicle.

Four of the factors—the length of the interview, the location of the questioning, the amount of restraint, and statements made by officers regarding the individual's freedom to move or leave—weigh in favor of finding that this was not a custodial interrogation. As Defendant acknowledged at Hearing, no one factor is determinative. Here, the Court finds, on balance, and upon consideration of the totality of the circumstances, Defendant was not in custody at the time he made his statements to McMillian; and Defendant's Motion to Suppress the statements made during the interview should be denied. Because Defendant was not subjected to custodial interrogation, no *Miranda* warnings were required to be given.[2]

---

[2] The Parties concurred at Hearing that the second issue – waiver – raised by Defendant's Motion to Suppress need only be addressed if the Court found Defendant was subjected to custodial interrogation [Dkt. 44 at 99]; however, the Court addresses the issue of waiver in the event the District Court disagrees with undersigned's recommendation on custodial interrogation.

**WAIVER OF *MIRANDA* RIGHTS**

Waiver of a defendant's *Miranda* rights is effective only if it is knowing and voluntary. *North Carolina v. Butler*, 441 U.S. 369, 379 (1979). The Supreme Court has provided that the inquiry into whether the waiver was knowing and voluntary has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations omitted).

Defendant did not urge at Hearing, nor does his briefing contend, that he was subjected to intimidation, coercion, or deception; rather he focuses on the second prong of the inquiry, arguing that he did not comprehend the rights he was waiving because the interview was conducted in English.[3] Defendant specifically contends that his waiver was not knowing and voluntary because he is not a native English speaker, was not orally advised of his rights in his native language, and further was not provided a written copy of his rights in any language.[4]

---

[3] Defendant urges the Court to adopt the test laid out by the Ninth Circuit in *United States v. Garibay*. The Court declines to do so. *Garibay* requires the Court to look at the following factors:
> The following considerations guide our inquiry: (1) whether the defendant signed a written waiver; (2) whether the defendant was advised of his rights in his native tongue; (3) whether the defendant appeared to understand his rights; (4) whether a defendant had the assistance of a translator; (5) whether the defendant's rights were individually and repeatedly explained to him; and (6) whether the defendant had prior experience with the criminal justice system.

*United States v. Garibay*, 143 F.3d 534, 538 (9th Cir. 1998) (internal citations omitted). The *Garibay* analysis has not been adopted by the Fifth Circuit. Rather, courts in this circuit have routinely applied the totality of circumstances test. *United States v. Alvarado-Palacio*, 951 F.3d 337, 341-42 (5th Cir. 2020) (applying the totality of circumstances test to find that defendant knew and understood his rights when he waived them); *United States v. Constantin*, 422 F. Supp. 3d 1116, 1123 (M.D. La. 2019) ("[I]t is the totality of the evidence which informs the Court's conclusions."); *United States v. Robles-Ramirez*, 93 F. Supp. 2d 762, 767 (W.D. Tex. 2000) (explaining that under a totality of circumstances analysis, the defendant's waiver of his *Miranda* rights was neither knowing nor intelligent).

[4] There is no requirement to provide *Miranda* rights in writing. *See United States v. Cardenas*, 410 F.3d 287, 294-97 (5th Cir. 2005) (finding that the defendant voluntarily waived her Miranda rights where law enforcement read them to her twice during a 2-hour interview, orally reminded her of those rights the next morning, and did not provide a

It is undisputed that Defendant is a Chinese national and English is not his first language. While it is the preference of the Fifth Circuit to administer "*Miranda* rights in the defendant's native language [it] is just that – a preference, not a requirement." *United States v. Constantin*, 422 F. Supp. 3d 1116, 1120-21 (M.D. La. 2019). Non-native speakers can knowingly waive their *Miranda* rights, even if they have poor or broken English. *Id.* at 1121. Indeed, "where there is sufficient conversation between the suspect and law enforcement officers to demonstrate that the suspect had an adequate understanding of English to fully comprehend the situation, a finding that consent was voluntary may be proper." *United States v. Monarrez-Mendoza*, No. 2:12-CR-0054(02), 2013 WL 961447, at *4 (N.D. Tex. Mar. 6, 2013) (quoting *United States v. Alvarado*, 898 F.2d 987, 991 (5th Cir.1990)), *report and recommendation adopted*, No. 2:12-CR-0054(2), 2013 WL 978214 (N.D. Tex. Mar. 13, 2013); *United States v. Hernandez*, No.14-119-SDD-SCR, 2015 WL 867930, at *15 (M.D. La. Feb. 27, 2015).

In *Hernandez*, the court found waiver, stating:

> Defendant was advised of her rights in a language that she sufficiently understands. As such, the fact that the Defendant was not informed of her rights in Spanish, even if that is the language she prefers or is more comfortable with, does not negate the validity of what were otherwise knowing, intelligent and voluntary waivers of the Defendant's *Miranda* rights.

*Hernandez*, 2015 WL 867930, at *15. Like *Hernandez,* in *Constantin*, the court looked to all surrounding circumstances, including that defendant, a native Romanian speaker, spoke in English and engaged in "spontaneous conversation" in English in finding that defendant was reasonably comfortable in communicating in English. *Constantin,* 442 F. Supp. 3d at 1120, 1123. (reasoning

---

written waiver form until after she made incriminating statements); *see also Berghuis v. Thompkins*, 560 U.S. 370, 387 (2010) ("The *Miranda* rule and its requirements are met if a suspect receives adequate *Miranda* warnings."); *California v. Prysock*, 453 U.S. 355, 359-60 (1981) (oral *Miranda* warnings were sufficient even though the warnings did not comply with the exact formulation provided in *Miranda*, as the Court explained that "*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures.").

that "[t]here is precedent to suggest that Constantin's ability to carry on a conversation in English means his waiver is knowing."). Similarly, in *United States v. Segovia-Ayala*, the court found that a Spanish-speaking defendant's waiver was knowing and voluntary where "Defendant spoke fairly good, but not great, English," and until the moment of arrest, he and the officer talked without difficulty. *United States v. Segovia-Ayala*, 648 F. App'x 403, 404 (5th Cir. 2016); *see United States v. Longoria*, 229 F. App'x 885, 888 (11th Cir. 2007) (finding that waiver was knowingly, voluntarily, and intelligently given where there was evidence that "Arredondo spoke fluent English and engaged in conversations with the law enforcement officers in no other language but English before his rights were read to him. There is no evidence that Arredondo asked for or needed an interpreter. [ ] After Arredondo's rights were read to him in English, he stated, in English, that he understood his rights."); *United States v. Santos*, 767 F. App'x 426, 428-29 (11th Cir. 2019) (finding that waiver was voluntarily and knowingly given where law enforcement asked defendant prior to *Miranda* warnings if he was comfortable speaking English, and he responded that he was in English and the entire interview was conducted in English, during which defendant never advised law enforcement that he did not understand).

McMillian expressly testified that he had previously interviewed non-native speakers and has experience with contacting translators for interviews when necessary; however, he did not believe one was needed in the instant case given Defendant's level of fluency [Dkt. 44 at 6]. Moreover, the Court was able to observe Defendant in the video. Defendant's rights were read to him by McMillian in English, and he stated in English that he understood. Defendant never advised McMillian that he did not understand. Rather, Defendant was articulate and responsive to McMillian's questions. Defendant actively carried on a conversation with McMillian in English, asked for explanation and clarification, posed his own questions, and responded appropriately to

the questions posed to him with more than one-word answers [*See* Dkts. 45-1; 45-2, 45-3]. Defendant did not ask for an interpreter; there is no evidence that one was needed. FBI Special Agent Christopher Thompson ("SA Thompson") further testified as to evidence of Defendant's English proficiency [Dkt. 44 at 67]. Defendant has lived continuously in the United States since 2016. When entering Temple University, Defendant would have had to take an English proficiency test and upon entering the PhD program at SMU, show documentation of such English language proficiency [Dkt. 44 at 67-69]. SA Thompson explained that there is some evidence that Defendant completed the Test of English as Foreign Language ("TOEFL") [Dkt. 44 at 68-69]. Documents found on Defendant's computer were written entirely in English and reflect Defendant's TOEFL scores [Dkts. 44 at 69-70; 45-8 at 1; 45-9 at 1; 45-10 at 1]. These facts, along with Defendant's education credentials reflecting a high level of intelligence, point toward finding that Defendant knowingly waived his *Miranda* rights; "the video evidence simply does not reflect that the language barrier between [McMillian] and [Defendant] presented an insurmountable obstacle to [Defendant's] understanding." *See Constantin*, 422 F. Supp. 3d at 1124. Upon evaluating the evidence before the Court, the Court finds the Government has satisfied its burden. Defendant's waiver was voluntarily given.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends Defendant Shanlin Jin's Motion to Suppress Evidence [Dkt. 33] be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 2nd day of December, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE